UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JASMINE M. MATSUKADO, | CIV. NO. 19-00045 LEK-KJM |
| Plaintiff, | |
| vs. | |
| NANCY A. BERRYHILL, ACTING SOCIAL SECURITY COMMISSIONER; | |
| Defendant. | |

**ORDER DENYING PLAINTIFF'S APPEAL AND
AFFIRIMG THE ADMINISTRATIVE LAW JUDGE'S DECISION**

Before the Court is Plaintiff Jasmine M. Matsukado's
("Plaintiff") Complaint for Review of Social Security Disability
Insurance Determination, filed January 24, 2019, in which she
appeals from Administrative Law Judge Jesse J. Pease's ("ALJ")
February 27, 2018 Decision ("Appeal"). [Dkt. no. 1.] The ALJ
issued the Decision after conducting a hearing on December 4,
2017. [Administrative Record ("AR") at 15.[1]] On July 7, 2019,
Plaintiff filed her Opening Brief. [Dkt. no. 11.] Defendant
Nancy A. Berryhill, Commissioner of Social Security ("the
Commissioner"), filed her Answering Brief on August 22, 2019,
and Plaintiff filed her Reply Brief on September 4, 2019. [Dkt.
nos. 13, 14.] On October 15, 2019, the Court took the Appeal

_____

[1] The Decision, including the Notice of Decision –
Unfavorable and the List of Exhibits, is AR pages 12-29.

under advisement without a hearing pursuant to Local Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii. [Dkt. no. 18.] Plaintiff's Appeal is hereby denied for the reasons set forth below.

## **BACKGROUND**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits beginning May 15, 2013; her claim was denied on April 1, 2016 and denied again upon reconsideration August 8, 2016. Plaintiff filed a request for a hearing on August 31, 2016, pursuant to 20 C.F.R. § 404.929, *et seq*. At the December 4, 2017 hearing, Plaintiff was represented by her current counsel and amended the alleged onset date to February 13, 2016. Plaintiff and Marcos Molinar, an impartial vocational expert ("VE"), testified at the hearing. [Decision, AR at 15.]

In the instant Appeal, Plaintiff does not contest the ALJ's findings in steps one through three of the five-step sequential analysis set forth in 20 C.F.R. § 404.1520. Thus, the ALJ's findings as to those steps are only briefly discussed here.

At step one, the ALJ determined that Plaintiff earned $2,431.00 in 2016, but found that these earnings did not establish substantial gainful activity. [Id. at 17.]

At step two, the ALJ found Plaintiff had the following impairments that were considered severe: "history of T12-L2 fractures sustained in 1998; status post fusion and placement of hardware with chronic pain; partial right foot drop; and bilateral carpal tunnel syndrome."  [Id. (emphasis omitted).] The ALJ found these impairments "significantly limit[ed] the ability to perform basic work activities as required by [Social Security Ruling ('SSR')] 85-28."  [Id.]  The ALJ found Plaintiff's impairment of rhinitis was nonsevere because the condition was medically managed and had "no more than a minimal effect on her ability to work."  [Id. at 18 (citing 20 CFR 404.1521; SSRs 85-28, 96-3p, and 96-4p).]  The ALJ also found Plaintiff's mental impairment of depression was nonsevere. [Id.]  Plaintiff does not dispute the ALJ's findings as to rhinitis or depression.

At step three, the ALJ found that Plaintiff did "not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)."  [Id. at 19 (emphasis omitted).]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR
> 404.1576(b) subject to the following limitations:
> she can lift, carry, push, or pull 20 pounds

occasionally and 10 pounds frequently, stand and
walk for about two hours out of an eight-hour
day, and sit for about six hours out of an eight-
hour day.  She can occasionally climb ramps and
stairs, occasionally balance, stoop, kneel,
crouch, and crawl, and never climb ladders,
ropes, and scaffolds.  She is limited to frequent
use of the hands and no forceful grasping or
torqueing with the hands (e.g. opening up a tight
jar).

[Id. at 20 (emphasis omitted).]

In considering Plaintiff's symptoms to determine her
RFC, the ALJ looked at her symptoms "and the extent to which
these symptoms [could] reasonably be accepted as consistent with
the objective medical evidence and other evidence, based on the
requirements of 20 CFR 404.1529 and SSR 16-3p." [Id.]  The ALJ
also considered the opinion evidence pursuant to 20 C.F.R.
§ 404.1527.  [Id.]  The ALJ followed a two-step process when he
reviewed Plaintiff's symptoms.  First, he examined whether an
underlying medically determinable physical and/or mental
impairment existed, and whether it could be reasonably expected
to result in Plaintiff's alleged symptoms.  Next, the ALJ
analyzed the extent to which Plaintiff's symptoms limited her
functioning.  If statements regarding intensity, persistence, or
limiting effects of pain were not substantiated by objective
medical evidence, the ALJ considered other evidence to make his
finding of Plaintiff's disability.  [Id.]

The ALJ noted that Plaintiff testified she could not work because: she experienced back pain, leg pain, right foot partial paralysis, right foot numbness, and hypersensitivity above the numb area; she experienced flare ups when wearing certain clothing, walking, or showering; she believed her vertebrae fracture was responsible for many of her symptoms; her condition had deteriorated over the last five years; she was recently diagnosed with bilateral carpal tunnel syndrome; she used biofeedback and mindfulness to help her sleep, but they had limited effect; and she experienced medication side effects of sleepwalking and constipation.  [Id.]

Regarding Plaintiff's activities of daily living, the ALJ noted Plaintiff's testimony that: she spends her day alternating between sitting, standing, and lying down; she receives help from family in taking care of her children; she is unable to get out of bed one day a week due to pain; she can sit for thirty to sixty minutes and then has to walk for fifteen to twenty minutes; and she is limited to lifting less than ten pounds because of back pain.  [Id. at 20-21.]  Also, the ALJ considered the Function Report - Adult,[2] and found Plaintiff's statements therein to be similar to her testimony.  [Id. at 21.]

_____

[2] Exhibit 4E, the Function Report - Adult, is an eight page report dated February 22, 2016, prepared by Plaintiff.  [AR at 185-92.]

The ALJ found Plaintiff's impairments could reasonably be expected to cause her symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Id.]

The ALJ noted Plaintiff did not need reminders to care for her personal needs or to take medications. Plaintiff "stated that she could prepare meals, drive, shop in stores, handle money, handle stress okay, and handle changes in routine well." [Id. (citing Exh. 4E).] Her treatment records show "marked improvement in her symptoms as of her second therapy visit, and she reported activities including regular socializing, daily exercise, yoga, Pilates videos, traveling to the mainland, and camping." [Id. (citing Exhs. 4F, p.4; 7F, pp. 5, 8, 10; 8F, pp. 54, 122).[3]] The ALJ noted the record reflects work activity after the alleged onset date. While that work activity did not rise to the level of substantial gainful activity, the ALJ found that it suggested Plaintiff's "daily

_____

[3] Exhibit 4F is a collection of medical records from Hawaii Pacific Health dated February 10, 2016 through May 19, 2016. [AR at 403-20.] Exhibit 7F is a series of Psychotherapy Intake Notes, Psychotherapy Progress Notes, and a Psychotherapy Treatment Plan, by Thomas Cummings, Ph.D., dated April 12, 2017 through September 5, 2017. [AR at 921-30.] Exhibit 8F is a collection of medical records from Hawaii Pacific Health dated July 22, 2016 through January 25, 2017. [AR at 931-1094.]

activities have at times not been consistent with the presence of disabling physical impairments." [Id.] "Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." [Id.] Therefore, the ALJ reasoned that Plaintiff's ability to participate in such activities conflicted with her "alleged intensity, persistence, and limiting effects of symptoms." [Id.]

The ALJ found Plaintiff's "medical history [wa]s not fully consistent with the alleged intensity, persistence, and limiting effects of her symptoms." [Id.] Plaintiff underwent surgery for her fractured lumbar vertebrae. [Id. (citing Exh. 5F, pp. 74, 240-242).[4]] The ALJ noted that, on February 13, 2016, Plaintiff received treatment in an emergency room for a suspected foot sprain after tripping and falling. [Id. (citing Exh. 1F, pp. 10-11).[5]]

On August 18, 2016, Plaintiff underwent a functionality examination. [Id. at 22 (citing Exh. 8F, p.6).]

---

[4] Exhibit 5F is a collection of medical records from Stanford Health Care, dated approximately July 4, 1998 through November 17, 1999. [AR at 421-916.]

[5] Exhibit 1F is medical records from Adventist Health, dated approximately January 2, 2013 through February 13, 2016. [AR at 234-73.]

It "showed that she was in mild to moderate pain and she had an antalgic gait, tenderness to palpation at L1-2 and at the right iliotibial band, decreased range of motion in the lumbar spine, hyper reflexes in the right Achilles, and right foot drop with loss of sensation in the right lateral foot." [Id.] However, she "had a negative straight leg raise test, she was able to tiptoe, and she otherwise had no significant neurological findings." [Id.] After a series of physical therapy sessions, Plaintiff "demonstrated excellent progress with her active range of motion and strength." [Id.] She been "able to go camping without much soreness afterward," and she was able to walk on the treadmill for ten minutes. [Id. (citing Exh. 8F, pp. 54, 57, 62).]

A January 29, 2017 magnetic resonance imaging ("MRI") scan "showed postoperative changes with a small focus of abnormal cord signal attributed to myelomalacia and old injury, however, there was no active compression and no regions of significant canal or foraminal compromise." [Id. (citing Exh. 8F, pp. 163-64).] As of February 2, 2017, Plaintiff "reported that she did not have 'real pain' but maybe had 'muscle soreness from exercise.'" [Id. (quoting Exh. 8F, p. 110).] As of March 2017, she "exhibited decreased motor strength in her right ankle, decreased sensation in the right L4-5 distribution, and cautious gait with steppage on the

right." [Id. (citing Exh. 8F, pp. 128).] She was unable to
"heel walk," but overall exhibited normal motor tone and bulk,
was able to "toe walk," and had normal reflexes and
coordination, and her "motor strength was general 5/5 everywhere
but her right ankle." [Id. (citing Exh. 8F, p. 128).]
"Plaintiff continued to receive routine and conservative
treatment for her symptoms." [Id.] The ALJ found there is no
indication she has been recommended to undergo further surgery
for her back or that she use a handheld assistive device. Also,
Plaintiff's medical records do not reflect either frequent
emergency room visits or hospitalizations. The ALJ found that
she did have some limitations from her impairments, and
therefore was limited to work as described in the RFC.
Regarding Plaintiff's alleged bilateral carpal tunnel syndrome,
the ALJ found that the evidence did not support any greater
limitation than what was reflected in her RFC. [Id.]

The ALJ gave "great weight" to the opinions of the
state agency consulting physicians. [Id. at 23.] The ALJ found
they assessed functional limitations generally consistent with
the limitations the ALJ found were supported by the record.
[Id. (citing Exhs. 1A; 3A.).[6]] The ALJ found the state agency

---

[6] Exhibit 1A is Plaintiff's Disability Determination
Explanation at the initial level ("Initial DDE"), dated March
31, 2016, signed by N Shibuya, M.D. [AR at 59-67.] Exhibit 3A
(. . . continued)

consulting physicians' opinions to be generally consistent with Plaintiff's reported activities of daily living. However, the ALJ found Plaintiff to be more limited than the consulting physicians opined, and assessed further exertional, postural, and manipulative limitations. [Id.]

The ALJ afforded "little weight" to the opinion of Dr. Kipta. [Id. (citing Exh. 6F).[7]] The ALJ found that, despite Dr. Kipta's treating relationship with Plaintiff, it was a brief treatment history. The ALJ noted that Dr. Kipta provided his opinion after one visit, and only treated Plaintiff one other time.[8] [Id.] Therefore, the ALJ found the length of treatment was insufficient for Dr. Kipta to form "a longitudinal picture" of Plaintiff's medical condition. [Id.]

Additionally, the ALJ found the limitations assessed by Dr. Kipta were inconsistent with Plaintiff's activities of daily living. [Id.] The ALJ gave the following examples: in

---

is Plaintiff's Disability Determination at the reconsideration level ("Reconsideration DDE"), dated August 5, 2016, signed by M Kuge, M.D. [AR at 69-78.]

[7] Exhibit 6F is a Physical Medical Source Statement for Plaintiff, signed by Joseph Kipta on March 23, 2017. [AR at 917-20.] See also Exh. 8F at 86 (AR at 1016) (treatment note signed by Joseph Kipta, MD)

[8] The ALJ did not identify Plaintiff's "one other time" visit with Dr. Kipta by date, however, Plaintiff was also seen by Dr. Kipta on December 5, 2016. [Exh. 8F at 85-88 (AR at 1015-18).]

May 2017, Plaintiff reported activities including socializing, and daily exercise, such as yoga and Pilates. [Id. (citing Exh. 7F, p. 5).] In August 2017, Plaintiff "reported she was 'really busy' and that this was 'good for her.'" [Id. (citing Exh. 7F, p. 8).] Therefore, the ALJ gave Dr. Kipta's opinion "little weight." [Id.]

The ALJ found the limitations in Plaintiff's RFC based on the evidence as a whole. The ALJ further noted Plaintiff's "subjective complaints are not entirely consistent with the medical evidence and other evidence in the record." [Id. at 24.] Therefore, the ALJ found that Plaintiff "has not been deprived of the ability to perform work subject to the [RFC] assessed by this decision for any 12-month period since the amended alleged onset date." [Id.]

The ALJ found that Plaintiff had past relevant work as: 1) food service manager, Dictionary of Occupational Titles ("DOT") § 187.167-106, a skilled occupation, at SVP Level seven, and light exertion level;[9] 2) caterer helper, DOT § 319.677-010,

_____

[9] 20 C.F.R. § 404.1568(c) states:

> Skilled work requires qualifications in which a
> person uses judgment to determine the machine and
> manual operations to be performed in order to
> obtain the proper form, quality, or quantity of
> material to be produced. Skilled work may
> require laying out work, estimating quality,
> determining the suitability and needed quantities
> (. . . continued)

a semi-skilled occupation, at SVP Level three, and light

exertion level; and 3) retail sales clerk, DOT § 279.357-054, a

semi-skilled occupation, at SVP Level three, and light exertion

level.[10]  [Decision, AR at 24.]  The ALJ found that, based on the

of materials, making precise measurements,
reading blueprints or other specifications, or
making necessary computations or mechanical
adjustments to control or regulate the work.
Other skilled jobs may require dealing with
people, facts, or figures or abstract ideas at a
high level of complexity.

"SVP" refers to "specific vocational preparation."  See 20
C.F.R. § 404.1568(a).  SVP is "the amount of lapsed time
required by a typical worker to learn the techniques, acquire
the information, and develop the facility needed for average
performance in a specific job-worker situation."  U.S. Dep't of
Labor, Dictionary of Occupational Titles ("DOT") at App'x C –
Components of the Definition Trailer (4th ed., rev. 1991).  A
level seven is "[o]ver 2 years up to and including 4 years."
Id.

[10] Section 404.1568(b) states:

Semi-skilled work is work which needs some skills but
does not require doing the more complex work duties.
Semi-skilled jobs may require alertness and close
attention to watching machine processes; or
inspecting, testing or otherwise looking for
irregularities; or tending or guarding equipment,
property, materials, or persons against loss, damage
or injury; or other types of activities which are
similarly less complex than skilled work, but more
complex than unskilled work.  A job may be classified
as semi-skilled where coordination and dexterity are
necessary, as when hands or feet must be moved quickly
to do repetitive tasks.

A level three SVP is "[o]ver 1 month up to and including 3
months."  DOT at App'x C.

VE's testimony, Plaintiff was unable to return to her past relevant work. [Id.]

As to step five, on the amended alleged disability onset date, Plaintiff was "a younger individual age 18-49," had at least a high school education, and was able to communicate in English.[11] [Id. (emphasis omitted) (citing 20 CFR 404.1563, 404.1564).] In light of these factors, Plaintiff's RFC, and the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Id. at 25.] The ALJ noted Plaintiff's limitations eroded the unskilled, light occupational base, but the VE testified that an individual with Plaintiff's limitations could perform the following occupations: 1) storage facility rental clerk, DOT § 295.367-026, an unskilled occupation, at SVP Level two and light exertion level, with approximately 44,792 jobs in the national economy; 2) microfilming document preparer, DOT § 249.587-018, an unskilled occupation, at SVP Level two, and sedentary exertion level, with approximately 145,025 jobs in the national economy;

---

[11] The ALJ noted that transferability of job skills was not material because the Plaintiff was not disabled regardless of transferable job skills. [Decision, AR at 24 (citing SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).]

and 3) escort vehicle driver, DOT § 919.663-022, an unskilled occupation, at SVP Level two, and sedentary exertion level, with approximately 21,000 jobs in the national economy.[12] [Decision, AR at 25.] The ALJ also found that the VE's testimony was consistent with the DOT. [Id.] The ALJ therefore found that Plaintiff could return "to other work that exists in significant numbers in the national economy," and, as of the amended alleged onset date through the date of the Decision, Plaintiff was not disabled under the Social Security Act. [Id. at 25-26 (citing 20 CFR 404.1520(g)).]

In the instant Appeal, Plaintiff argues the ALJ erred in disregarding and/or rejecting her testimony, as well as the opinion of Dr. Kipta, about her limitations. Plaintiff also argues the ALJ erred in his presentation of hypothetical questions to the VE.

**STANDARD**

**I.   Review of Social Security Decisions**

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir.

---

[12] A level two SVP is "[a]nything beyond short demonstration up to and including 1 month." DOT at App'x C.

2014).  Thus, in reviewing the Commissioner's decision, this Court applies the same standards the Ninth Circuit applies.

A court will only disturb the Commissioner's decision "if it is not supported by substantial evidence or if it is based on legal error."  Id. (citation and quotation marks omitted).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted).  In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole.  Id. (citation omitted).  Where the inferences reasonably drawn from the record would support either affirmance or reversal, the district court may not substitute its judgment for the ALJ's.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).  Furthermore, "[e]ven when the ALJ commits legal error, we uphold the decision where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error,

the agency's path may reasonably be discerned, even if the
agency explains its decision with less than ideal clarity." Id.
(citation and internal quotation marks omitted).

## II.  **Five-Step Analysis**

The following analysis applies in cases involving
review of the denial of social security disability benefits.

> For purposes of the Social Security Act, a
> claimant is disabled if the claimant is unable
> "to engage in any substantial gainful activity by
> reason of any medically determinable physical or
> mental impairment which can be expected to result
> in death or which has lasted or can be expected
> to last for a continuous period of not less than
> 12 months."  42 U.S.C. § 423(d)(1)(A).  In order
> to determine whether a claimant meets this
> definition, the ALJ employs a five-step
> sequential evaluation.  Parra v. Astrue, 481 F.3d
> 742, 746 (9th Cir. 2007); 20 C.F.R.
> §§ 404.1520(a), 416.920(a).  In brief, the ALJ
> considers whether a claimant is disabled by
> determining: (1) whether the claimant is "doing
> substantial gainful activity"; (2) whether the
> claimant has a "severe medically determinable
> physical or mental impairment" or combination of
> impairments that has lasted for more than 12
> months; (3) whether the impairment "meets or
> equals" one of the listings in the regulations;
> (4) whether, given the claimant's "residual
> functional capacity," the claimant can still do
> his or her "past relevant work"; and (5) whether
> the claimant "can make an adjustment to other
> work."  20 C.F.R. §§ 404.1520(a), 416.920(a).
> The claimant bears the burden of proof at steps
> one through four.  Parra, 481 F.3d at 746.

Molina, 674 F.3d at 1110.  If the analysis reaches step five,
the burden shifts to the Commissioner to prove the claimant can

perform other work.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1011 (9th

Cir. 2014).

**DISCUSSION**

**I.   <u>Whether the ALJ Erred in Rejecting Plaintiff's Testimony</u>**

Plaintiff argues "[t]he ALJ failed to give specific,

clear and convincing reasons to reject [Plaintiff's] symptom

testimony." [Opening Brief at 8 (emphasis omitted).]

**A.   <u>Credibility Assessment</u>**

"[T]o determine whether a claimant's testimony

regarding subjective pain or symptoms is credible," an ALJ must

use a "two-step analysis." <u>Garrison</u>, 759 F.3d at 1014.  "First,

the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other

symptoms alleged." <u>Id.</u> (citation and quotation marks omitted).

"Second, if the claimant meets the first test, and there is no

evidence of malingering, the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so."

<u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)

(citations and internal quotation marks omitted).  The Ninth

Circuit has stated

> The ALJ may consider many factors in weighing a
> claimant's credibility, including (1) ordinary
> techniques of credibility evaluation, such as the

17

> claimant's reputation for lying, prior
> inconsistent statements concerning the symptoms,
> and other testimony by the claimant that appears
> less than candid; (2) unexplained or inadequately
> explained failure to seek treatment or to follow
> a prescribed course of treatment; and (3) the
> claimant's daily activities.

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

(citations and internal quotation marks omitted).

"'Contradiction with the medical record is a sufficient basis

for rejecting the claimant's subjective testimony.'" Everson v.

Colvin, 577 F. App'x 743, 744 (9th Cir. 2014) (quoting Carmickle

v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir.

2008)). Inconsistency between a plaintiff's activities of daily

living and her testimony is also a specific, clear and

convincing reason for rejecting a plaintiff's testimony. Id.

Furthermore, "[g]eneral findings are insufficient;

rather, the ALJ must identify what testimony is not credible and

what evidence undermines the claimant's complaints." Brown-

Hunter, 806 F.3d at 493 (citations and quotation marks omitted).

However, "[i]f the ALJ's credibility finding is supported by

substantial evidence in the record, we may not engage in second-

guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.

2002) (citation omitted).

**B.    The ALJ's Credibility Analysis**

First, the ALJ found that Plaintiff's "medically

determinable impairments could reasonably be expected to cause

the alleged symptoms." [Decision, AR at 21.] Second, he found that Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record." [Id.] Plaintiff argues the ALJ erred in not specifying which parts of Plaintiff's testimony he found not credible and in not providing clear and convincing reasons for making such a finding.

With regard to Plaintiff's contention that the ALJ did not sufficiently specify which testimony he found to be not credible, Plaintiff relies heavily on the Ninth Circuit decision of Brown-Hunter, 806 F.3d 487. See, e.g., Opening Brief at 11. However, her reliance on Brown-Hunter is misplaced. There, the Ninth Circuit held that the ALJ erred in failing to: 1) identify which testimony she found not credible; and 2) explain "which evidence contradicted that testimony." Brown Hunter, 806 F.3d at 494 (emphasis and citation omitted). The Ninth Circuit was not able to "review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's] pain testimony." Id. In Brown-Hunter, the ALJ "did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." Id. The Ninth Circuit rejected the Commissioner's argument that it was acceptable for the reviewing court to "infer that the ALJ rejected petitioner's testimony to the extent it conflicted with" the medical

evidence.  Id. (brackets, citation, and quotation marks, omitted).

Here, the ALJ did not make "only a general credibility finding without providing any reviewable reasons" for doing so. See id.  Instead, he thoroughly recounted Plaintiff's testimony and found that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  See Decision, AR at 20-21.  "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination.  After making this boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why."  Treichler, 775 F.3d at 1103 (citations omitted). However, this introductory remark, without elaboration, "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based."  Id. at 1103 (quoting 42 U.S.C. § 405(b)(1)).

The instant Decision is distinguishable from the ALJs' decisions in Treichler and Brown-Hunter.  In contrast to the decisions in those cases, the ALJ's analysis of Plaintiff's testimony was not confined to a single, introductory statement that the testimony was not credible.  Here, the ALJ specifically

identified Plaintiff's testimony regarding the intensity,
persistence, and limiting effects of her symptoms by summarizing
her testimony, including, but not limited to, the location,
triggers, and description of her pain, numbness, and paralysis.
[Decision, AR at 20-21.]  Therefore, the ALJ met his
responsibility to provide a detailed and cogent summary of
Plaintiff's testimony.  See, e.g., James B. v. Berryhill, Case
No. 6:17-cv-1888-SI, 2018 WL 5786218, at *4 (D. Or. Nov. 5,
2018) (concluding the ALJ's "detailed and cogent summary" of the
plaintiff's testimony was satisfactory and distinguishable from
the general conclusory statements prohibited by Treichler and
Brown-Hunter).  Because the ALJ specified which portion of
Plaintiff's testimony he found was not credible, this Court is
able to discern the "'agency's path'" in reaching the
creditability determination.  See Treichler, 799 F.3d at 1103
(stating reversal was required "[b]ecause 'the agency's path'
[could not] 'reasonably be discerned'" (quoting Alaska Dep't of
Envtl. Conserv. v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983
(2004))).

     Plaintiff also argues that the ALJ did not provide
sufficient reasons for rejecting her symptom testimony.  The ALJ
rejected her testimony after he found inconsistencies between
Plaintiff's testimony and: 1) her activities of daily living;
and 2) the objective medical evidence.  [Decision, AR at 20-24.]

# 1.  Inconsistency with Plaintiff's Daily Activities

An "ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina, 674 F.3d at 1112 (citation and internal quotation marks omitted).  The Ninth Circuit has stated,

> [w]hile a claimant need not "'vegetate in a dark room'" in order to be eligible for benefits, Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (quoting Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, see Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Id. at 1112–13 (some citations omitted).

There are "two grounds for using daily activities to form the basis of an adverse credibility determination."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  The first ground is activities that contradict a plaintiff's testimony.  Id.  The second ground is the activities show a claimant "'is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting.'" Id. (citations and quotation
marks omitted).

Here, with respect to the first ground, the ALJ found
that Plaintiff's claims as to the limiting effects of her
impairments were inconsistent with her daily activities,
including: performing personal care and taking medication
without reminders; preparing meals, driving, shopping in stores,
handling money, dealing with stress in an acceptable ways,
handling changes in routine well; socializing regularly;
exercising daily; participating in yoga; using Pilates videos;
traveling to the mainland; and camping. [Decision, AR at 21.]
With respect to the second ground, Plaintiff engaged in work
activity after the alleged onset date which, although not rising
to the level of substantial gainful activity, was indicative of
inconsistency between her activities of daily living and her
claims of disabling impairment. [Id.] The ALJ noted "[s]ome of
the physical and mental abilities and social interactions
required in order to perform these activities are the same as
those necessary for obtaining and maintaining employment."
[Id.]

Plaintiff argues the ALJ's explanation of the
inconsistency between her activities of daily living and her
testimony was inadequate. In support, Plaintiff argues "where
the ALJ added a summary of activities of daily living with the

same lack of specificity as to what inconsistencies exist and with none identifiably present, this did not cure the ALJ's error of failing to provide specific, clear and convincing reasons to reject [Plaintiff's] testimony." [Opening Brief at 14-15 (citation omitted).] However, the ALJ analyzed Plaintiff's testimony in light of both of the grounds expressed in Orn. See Orn, 495 F.3d at 639. The ALJ clearly and specifically explained that he found Plaintiff's testimony to be contradicted by her activities of daily living, cited to specific activities, relayed his interpretation thereof, and made findings. See Decision, AR at 21. Thus, Plaintiff's argument is rejected.

Plaintiff also argues the ALJ's interpretation of the evidence was incorrect because there was no inconsistency between her daily activities and her testimony. However, the ALJ is responsible for resolving issues related to credibility, as well as conflicts and ambiguities in the evidence. Brown-Hunter, 806 F.3d at 492. Furthermore, even if Plaintiff's assertion that no inconsistency exists is a rational interpretation of the evidence, "if evidence exists to support more than one rational interpretation, [this Court] must defer to the Commissioner's decision." See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted). Here, the ALJ's interpretation is rational,

therefore, Plaintiff's argument is rejected, and the ALJ's assessment of the inconsistencies between Plaintiff's testimony and her activities of daily living will not be disturbed.

### 2. <u>Inconsistency with Medical Evidence</u>

The ALJ noted inconsistencies between Plaintiff's objective medical evidence and her testimony regarding "the alleged intensity, persistence, and limiting effects of her symptoms." [Decision, AR at 21.] Plaintiff contends the ALJ's treatment of her testimony was inadequate with respect to the objective medical evidence. [Opening Brief at 12 (citing <u>Brown-Hunter</u>, 806 F.3d at 493).] However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." <u>Carmickle</u>, 533 F.3d at 1161 (9th Cir. 2008) (citation omitted). Here, the ALJ highlighted contradictions including: Plaintiff's lack of "significant neurological findings"; [Decision, AR at 22;] MRI scan with "no active compression and no regions of significant canal or foraminal compromise;" [<u>id.</u> (citing Exhibit 8F, pp. 163-164);] and improvement following physical therapy, including when she "did not demonstrate foot drop or steppage, though she still had right ankle weakness," [<u>id.</u> (citing Exh. 8F, pp. 118, 125)].

Evidence of conservative treatment can be sufficient to uphold an ALJ's adverse credibility analysis. <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ also noted

Plaintiff's conservative treatment history, without frequent emergency room visits or extended hospitalizations, since the amended alleged onset date. Thus, the ALJ identified sufficient inconsistencies between Plaintiff's testimony as to the intensity, persistence and limiting effects of her symptoms and the objective medical evidence with enough specificity for this Court to review the "agency's path."

Even if any single instance of either Plaintiff's daily activities or the objective medical evidence, in isolation, would not constitute a clear and convincing reason to discredit Plaintiff's testimony, the combination of evidence met the standard required to uphold the ALJ's Decision. See Turull v. Saul, 777 F. App'x 212, 214 (9th Cir. 2019) (holding that "the lack of supporting medical evidence, inconsistencies between [the plaintiff's] testimony and the record, and [the plaintiff's] reported daily activities" were clear and convincing reasons to discount his testimony (some citations omitted) (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009))). Therefore, the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony. Furthermore, "[a]lthough [Plaintiff] advocates an alternative interpretation of the medical records, [s]he has not shown that the ALJ's interpretation was unreasonable." See id. (citing Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017)). For

these reasons, Plaintiff's arguments regarding the ALJ's credibility analysis are rejected.

## II.  **Whether the ALJ Erred in Rejecting Dr. Kipta's Opinion**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Kipta.  Plaintiff argues the ALJ failed to consider all of the factors listed in 20 C.F.R. § 404.1527(c), and he failed to adequately explain his decision regarding Dr. Kipta.  In particular, Plaintiff argues more weight should have been afforded to Dr. Kipta's opinion because he was her treating physician, and a specialist in neurology.  In response, the Commissioner argues the ALJ's rejection of Dr. Kipta's opinion was appropriate, and he properly explained his decision.

On the evaluation of medical source opinions, the Ninth Circuit has stated,

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician.  Id. § 404.1527(c)(2)–(6).

Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (alteration in Trevizo).  The Ninth Circuit has also stated,

> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. (quoting Bayliss, 427 F.3d at 1216); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).[13]  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn, 495 F.3d at 632.  Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician **or** a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original).

Revels, 874 F.3d at 654-55 (emphasis and some alterations in

Revels).

---

[13] Cotton was superseded by statute on other grounds.  See, e.g., Everson, 577 F. App'x at 743.

Here, the opinion of Dr. Kipta is contradicted by the opinions of the two state agency consulting physicians Dr. Shibuya and Dr. Kuge. See Decision, AR at 23 (citing Exhs. 1A; 3A). Therefore, to reject Dr. Kipta's opinion, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence," which he accomplished by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." See Revels, 874 F.3d at 654 (citations, and internal quotation marks omitted).

## A.  The ALJ's Evaluation of Dr. Kipta's Opinion

In assigning little weight to Dr. Kipta's opinion, the ALJ first noted the length of the treating relationship.  The ALJ found that, because Dr. Kipta furnished his opinion "after one visit with [Plaintiff] and only treated her one other time," "the treating relationship did not last long enough for Dr. Kipta to have obtained a longitudinal picture of [Plaintiff's] medical condition."  [Decision, AR at 23.] Second, the ALJ concluded that "the severe limitations assessed by Dr. Kipta are inconsistent with the claimant's activities of daily living."  [Id.]

With regard to the length of the treating relationship, the Ninth Circuit has noted that a treating physician's opinion may warrant little to no weight if the

physician had "not seen the patient long enough to 'have obtained a longitudinal picture' of the patient's impairments." Holohan v. Massanari, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)(i)). The ALJ found that Plaintiff's two visits with Dr. Kipta did not generate the kind of treating relationship sufficient to justify controlling or even substantial weight. See Decision, AR at 23. Furthermore, the duration, or lack thereof, of the physician-patient relationship is one of several factors that has been considered in evaluating opinion evidence. See Lee v. Berryhill, 721 F. App'x 604, 607 (9th Cir. 2017) ("The minimal objective evidence supporting [the physician's] opinions and the brevity of the patient-physician relationship justify discounting these opinions." (citation omitted)). Therefore, the ALJ did not err in assigning little weight to Dr. Kipta's opinion in light of the length of the treating relationship.

The ALJ also found Dr. Kipta's opinion to be inconsistent with Plaintiff's activities of daily living. [Decision, AR at 23.] The Ninth Circuit held that the weight afforded to a medical opinion may be discounted pursuant to an inconsistency between the restrictions opined therein and plaintiff's level of activity. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (noting the extreme restrictions assessed by the claimant's treating physician were inconsistent

with unexceptional activities of daily living).  Furthermore, inconsistencies between a treating physician's opinion and a claimant's activities of daily living can be a specific and legitimate reason to reject the claimant's testimony.  Morgan, 169 F.3d at 600-02.  Here, the ALJ found that Dr. Kipta's opinion was inconsistent with Plaintiff's activities of daily living, "including socializing, daily exercise, and using yoga and Pilates videos."  [Decision, AR at 23 (citing Exh. 7F, p. 5).]  Thus, the inconsistencies between Plaintiff's  activities of daily living and Dr. Kipta's opinion support the ALJ's decision to assign little weight to Dr. Kipta's opinion.

###### B.    Medical Opinion Evidence

Here, although the ALJ's treatment of the medical opinion evidence was not elaborate, it was adequate.  "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)).  Because the ALJ only cited two factors in assessing Dr. Kipta's opinion, several possibly relevant factors, including some raised by the Commissioner in the Answering Brief, were not considered in reviewing the ALJ's Decision.  See Answering Brief at 10

31

(arguing "Dr. Kipta cited only Plaintiff's subjective symptom testimony" in his opinion).  The ALJ could have cited the check-the-box, conclusory format of Dr. Kipta's opinion, and the lack of objective or clinical findings cited by Dr. Kipta therein, in assigning less weight to Dr. Kipta's opinion.  <u>See</u> Exh. 6F. However, because the ALJ did not identify those factors, they were not considered by this Court in reviewing the ALJ's Decision.

Furthermore, Plaintiff asserts that, in accordance with the factors listed in § 404.1527(c)(2)–(6), the ALJ should have given more weight to Dr. Kipta's opinion because he is a specialist in neurology.  The ALJ did not specifically identify Dr. Kipta as a specialist, nor explain his decision to not give the opinion extra weight due to Dr. Kipta's specialty.  <u>See</u> Decision, AR at 23.  However, the ALJ "considered the opinion evidence in accordance with 20 C.F.R. § 404.1527."  <u>Id</u> at 20. Furthermore, "[t]he agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c)." <u>Harris v. Colvin</u>, 584 F. App'x 526, 527 n.1 (9th Cir. 2014). Similarly, the ALJ here was not required to explicitly discuss each § 404.1527(c) factor.  <u>See</u> <u>id</u>.  Therefore, sufficient consideration of the § 404.1527(c) factors is evidenced in the ALJ's decision.

In light of the conflicting medical opinion evidence, the ALJ set out the facts and conflicting evidence in a thorough and detailed summary, stated his interpretation of the facts and evidence and made his findings.  See Decision, AR at 23.  The ALJ gave the opinion of Dr. Kipta a reduced weight due to the brevity of the treating relationship, and the conflicts with Plaintiff's activities of daily living.  Thus, the opinion of Dr. Kipta was not assigned reduced weight solely due to the conflict with nonexamining physicians, Dr. Shibuya and Dr. Kuge, and the reasons provided by the ALJ are sufficient.

Plaintiff also alleges Dr. Shibuya and Dr. Kuge did not review the entirety of her medical record.  [Opening Brief at 25 (citing AR at 59-67, 69-78).[14]]  Plaintiff's citation to every page of both the Initial DDE and Reconsideration DDE is not persuasive because it does not allow for meaningful review. Plaintiff's argument that the state agency consulting physicians "only review[ed] 187 pages of her 754 pages of medical records" is construed as an argument that the ALJ erred in relying on the opinions of Dr. Shibuya and Dr. Kuge because: 1) the state agency consulting physicians did not review Plaintiff's 496 pages of records from Stanford, Exhibit 5F; and 2) the state

_____

[14] AR at 59-67 is Exhibit 1A, the Initial DDE by Dr. Shibuya, and AR at 69-78 is Exhibit 3A, the Reconsideration DDE by Dr. Kuge.

agency consulting physicians did not review medical records that were generated from treatment that occurred after the Initial DDE and Reconsideration DDE. See Opening Brief at 25.

With respect to the first point, both state agency consulting physicians noted that they had received records from, inter alia, Stanford. See Exh. 1A at 3, AR at 61; Exh. 3A at 4, AR at 72. Plaintiff has not presented any argument that the Stanford records considered by the state agency consulting physicians are different from the Stanford records are AR pages 421 through 916. Therefore, Plaintiff's claim that the state agency consulting physicians only reviewed 187 pages of her medical records is unsubstantiated, and contrary to the evidence.

With respect to the second point, the ALJ noted that "evidence received after the reconsideration determination including medical records and hearing testimony supports a finding that the claimant is more limited than the medical consultants concluded." [Decision, AR at 23.] The ALJ included "further exertional, postural, and manipulative limitations" in Plaintiff's RFC to account for the additional medical records. [Id.] Thus, the ALJ properly incorporated records from Plaintiff's treatment that were generated after the completion of the Initial DDE and Reconsideration DDE into the RFC.

Therefore, Plaintiff's argument that the medical evidence reviewed by Drs. Shibuya and Kuge was insufficient is rejected.

For these reasons, Plaintiff's arguments regarding the medical opinion evidence are rejected.

## III. **Step Five Error**

Plaintiff argues the ALJ erred at step five of the analysis because he did not include all of the limitations claimed by Plaintiff in his hypothetical questions to the VE. Therefore, Plaintiff argues, the Commissioner did not meet her burden of demonstrating that jobs which Plaintiff can perform exist in significant numbers in the national economy.

"[I]t is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record." Bayliss, 427 F.3d at 1217-18 (citation omitted). Therefore, it was proper for the ALJ to pose hypothetical questions to the VE that "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." See id. at 1217. Here, the limitations alleged to have been omitted in error from the hypothetical questions are based on the portions of Plaintiff's testimony that the ALJ found to be not credible and the opinion of Dr. Kipta. Because the ALJ's hypothetical questions included the limitations he found to be credible and supported by the substantial evidence, the ALJ's reliance on the testimony of the VE was proper. See Decision,

AR at 25.  Plaintiff's arguments regarding error in the
hypothetical questions is rejected.

**CONCLUSION**

On the basis of the foregoing, Plaintiff's appeal of
the Administrative Law Judge's February 27, 2018 Decision is
HEREBY DENIED, and the Decision is HEREBY AFFIRMED.  There being
no remaining issues in this case, the Court DIRECTS the Clerk's
Office to enter judgment and close the case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, February 27, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JASMINE M. MATSUKADO VS. NANCY A. BERRYHILL, ETC.; CV 19-00045
LEK-KJM; ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING THE
ADMINISTATIVE LAW JUDGE'S DECISION**